# 14-4221-CV

## United States Court of Appeals

*for the*

## Second Circuit

D.C.A. GRANTOR TRUST, GIOVANNI CARLOTTA, RAIMONDO
IALLONARDO, VALERIO PIACENZA, MILENA AMPALLA, ANTONELLA
BACCHIOCCHI, FILIPPO BAGOLIN, GIANCARLO BARTOLOMEI CORSI,
ANNELIESE GUNDA BECKER, GIORGIO BENNATI, CARLA MORATA,
ORSOLINA BERRA, EUGENIA RE, STEFANO BISTAGNINO, FELICINA
GAIOLI, ANDREA BONAZZI, LUCA VITALI, STEFANIA BONPENSIERE,
MARCELLO CALANCA, ELETTRA CASALINI, BRUNO CALMASINI,
TARCISIA DALBOSCO, ITALIA CAMATO, VINCENZO CARBONE,
MARCO CAVALLI, VALERIA TOSO, CARMELINA CENSI, GIAN
FRANCESCO CERCATO, BARBARA RICCHI, SILVANA CORATO, GIULIA
GREGGIO, FRANCESCO CORSO, GIUSEPPINA CORSO, LAURA COSCI,
ALDO DAVID, ANTONIO DE FRANCESCO, FRANCESCO FOGGIATO,

*(For Continuation of Caption See Inside Cover)*

─────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR INTERVENOR BANK OF NEW YORK MELLON, AS INDENTURED TRUSTEE

REED SMITH LLP
*Attorneys for Intervenor*
    *Bank of New York Mellon,*
    *as Indentured Trustee*
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

RINALDO FRISINGHELLI, GRAZIELLA DACROCE, ANGIOLINO FUSATO, GABRIELE FUSATO, ANNA STORCHI, MADDALENA GAIOLI, FRANCESCO MAURO GHEZZI, MARIA LUIGIA CONTI, GIANFRANCO GUARINI, INNOVAMEDICA S.P.A., FKA MATIVA S.R.I., ANGELO LEONI, RACHELE BONTEMPI, CARMELO MAIO, CLAUDIO MANGANO, MARITZA LENTI, ROMANO MARTON, MIRCO MASINA, GUGLIELMINA MASSARA, MARTINO VERNA, ALESSANDRO MORATA, MARIA RITA MORETTO, UGO LORENZI, BRUNO PAPPACODA, LUISELLA GUARDINCERRI, ADRIANO ROSATO, SANTE STEFANI, ANGELINA SALMISTRARO, STUDIO LEGALE BENNATI, RENATE TIELMAN, MANUELITO TOSO, MAURO TOSO, MARIO VICINI, GIUSEPPINA CAPEZZERA, GRAZIELLA BONADIMAN, SALVATORE MELCHIONDA, FRANCO PEZZE, TIZIANO SASSELLI, GIOVANNA FERRO, RENATA BOSCARIOL, GIAMPAOLO MONTINO, MAURIZIO SERGI, SIMONA STACCIOLI, AUGUSTO ARCANGELI DE FELICIS, ALBERTO COMPARE, MANUELA DE ROSA KUNDERFRANCO, GIOVANNA CONNENA, ANTONELLA DE ROSA KUNDERFRANCO, ADRIANA DELL'ERA, GIAN CARLO GANAPINI, LAURA ANNA CAPURRO, FERNANDA ANGELA LOVERO, SABRINA PARODI, PAOLA ROSA, LICIA STAMPFLI-ROSA, AGOSTINO CONSOLINI, CESARINO CONSOLINI, MARIO GIACOMETTI, VERNA GUALANDI, HILDA RUPPRECHT, GIANFRANCO AGOSTINI, SARA BARTOLOZZI, ROBERTO BERARDOCCO, CARLO BRETTI, SUSANNA BRETTI, ANNA FERRI, GIOVANNI GIARDINA, VINCENZA SABATELLI, MARIA ROBBIATI, ANGELO COTTONI, BRUNA MATTIOLI, ALLESSANDRA REGOLI, SILVIA REGOLI, INES ROTA, VITO ZANCANER, MATTEO ZANICHELLI, GIOVANNI ZANICHELLI, MASSIMO BETTONI, CARLA MARINI ARCANGELI DE FELICIS, CARIFIN S.A., DIEGO CASTAGNA, EUFROSINA DE STEFANO, GRAZIANO ADAMI, MONICA CROZZOLETTO, CELESTINO GOGLIA, PAOLO LISI, ELIDE MARGNELLI, AMATO MORI, RUGGERO ROSSINI, ANTONIETTA GUISEPPINA BRIOSCHI, RAFFAELE ROSSINI, SIMONETTA MONTANARI, CLAUDIO MORI, ALFREDO PELLI, GRAZIELLA BERCHI, GIUSEPPE SILVIO ROSSINI, MARINELLA SCALVI, LAURA ROSSINI, ADRIANO BETTINELLI, SERGIO LOVATI, ALBERTO BACIUCCO, OTELLO BACIUCCO, EMANUELE BOTTI, GIOVANNI BOTTI, MARIA ZILIANI, CARLO FARIOLI, PIER LUIGI LUCIBELLO PIANI, FRANCO TRENTIN, STEFANIA TRENTIN, MARCO BORGRA, SERGIO BORGRA, DONATELLA FRAGONARA ZANOTTI,

*Plaintiffs-Appellants,*

PEDRO KALBERMANN, BANK OF NEW YORK MELLON,

*Plaintiffs,*

ALLEN,

*Plaintiff-Counter-Defendant,*

– v. –

REPUBLIC OF ARGENTINA,

*Defendant-Counter-Claimant-Appellee,*

ADMINISTRACION NACIONAL DE SEGURIDAD SOCIAL,

*Defendant.*

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO
## FEDERAL RULE OF APPELLATE PROCEDURE 26.1

The Bank of New York Mellon is a wholly owned subsidiary of The Bank of New York Mellon Corp., a Delaware corporation, which is a publicly held company. No publicly held company owns 10% or more of The Bank of New York Mellon Corp.'s stock.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

COUNTER-STATEMENT OF THE ISSUES ........................................2

COUNTER-STATEMENT OF THE CASE ............................................3

I.  BNY Mellon Holds Payments Received From The Republic On The Exchange Bonds As Indenture Trustee For The Exclusive Benefit Of Itself And The Holders Of The Bonds. .......................................3

II.  The District Court Orders The Republic To Make A Ratable Payment To The NML Plaintiffs Whenever It Pays Any Amount Due On The Exchange Bonds And This Court Affirms. .................7

III.  The Republic Makes Payments On The Exchange Bonds Without Making Ratable Payments To The NML Plaintiffs, And BNY Mellon Retains The Payments In Compliance With The Injunctions. ................................................9

IV.  The District Court Clarifies That BNY Mellon Should Retain The Payments Consistent With The Indenture And The Injunctions. ................................................10

V.  The District Court Rejects Appellants' Motions Seeking Turnover Of The Payments BNY Mellon Holds As Indenture Trustee Pursuant To Court Order. ...............................................11

STANDARD OF REVIEW ..................................................................13

SUMMARY OF ARGUMENT ............................................................14

ARGUMENT .......................................................................................14

I.  Under The Indenture, The Republic Has No Interest In Payments That BNY Mellon Holds As Indenture Trustee For The Benefit Of Itself And The Holders Of The Exchange Bonds. ................................................16

II.    The Republic Is Not Entitled To Possession Of The Held Funds
       And BNY Mellon's Rights In Those Funds Are Superior To
       Any Purported Rights Of Appellants. ...........................................20

       A.    The Republic Is Not Entitled To Possession Of
             The Held Funds. ..........................................................20

       B.    Appellants' Rights Are Inferior To BNY Mellon's
             Rights In The Held Funds. ...........................................22

III.   Appellants' Argument That The Indenture Is "Illegal" Is
       Meritless. ....................................................................................25

CONCLUSION ...........................................................................................28

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ....................................29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*,
    11 N.Y.3d 146 (2008) .................................................................................. 16-17

*Banc of Am. Secs. LLC v. Solow Bldg. Co. II, LLC*,
    47 A.D.3d 239 (N.Y. App. Div. 2007) ...............................................................7

*Bass v. Bass*,
    140 A.D.2d 251 (N.Y. App. Div. 1988) ...........................................................15

*Beauvais v. Allegiance Sec. Inc.*,
    942 F.2d 838 (2d Cir. 1991) ........................................................15, 16, 19, 20

*Capital Ventures International v. Republic of Argentina*,
    443 F.3d 214 (2d Cir. 2006) ..............................................................................19

*Couldock & Bohan, Inc. v. Societe Generale Securities Corp.*,
    93 F. Supp. 2d 220 (D. Conn. 2000)..................................................................21

*DeBeck v. United States*,
    AS-11-CA-45-FB, 2014 WL 4416078 (W.D. Tx. Aug. 20, 2014) ...................21

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
    838 F.2d 66 (2d Cir. 1988) ...............................................................................16

*EM Ltd. v. Republic of Argentina*,
    865 F. Supp. 2d 415 (S.D.N.Y. 2012) ................................................................5

*Gelbard v. Esses*,
    96 A.D.2d 573 (N.Y. App. Div. 1983) ..............................................................22

*HBE Leasing Corp. v. Frank*,
    48 F.3d 623 (2d Cir. 1995) ...............................................................................13

*JP Morgan Chase Bank, N.A. v. Motorola, Inc.*,
    47 A.D.3d 293 (N.Y. App. Div. 2007) ..............................................................24

*Kalisch-Jarcho, Inc. v. City of New York*,
  58 N.Y.2d 377 (N.Y. 1983) ................................................................. 7

*Karaha Bodas Co. v. Perusahaan Pertambangan Miinyak Dan Gas
  Bumi Negara*,
  313 F.3d 70 (2d Cir. 2002) .............................................................. 15

*Lang v. State of New York*,
  258 A.D.2d 165 (1st Dept. 1999) .............................................. 15, 20

*Louisville Joint Stock Land Bank v. Radford*,
  295 U.S. 555 (1935) ........................................................................ 24

*Meckel v. Cont'l Res. Co.*,
  758 F.2d 811 (2d Cir. 1985) ........................................................... 16

*In re Miraglia v. Essex Ins. Co.*,
  96 A.D.3d 945 (N.Y. App. Div. 2012) ............................................ 15

*In re Municipal Art Society v. New York*,
  137 Misc. 2d 832 (N.Y. Sup. Ct. 1987) .......................................... 21

*NML Capital, Ltd. v. Republic of Argentina*,
  08-cv-6978(TPG), 09-cv-1707(TPG), 09-cv-1708(TPG), 2011 WL
  9522565 (S.D.N.Y. Dec. 7, 2011) ........................................ 7, 23, 25

*NML Capital, Ltd. v. Republic of Argentina*,
  08-cv-6978(TPG), 09-cv-1707(TPG), 09-cv-1708(TPG), 2012 WL
  5895784 (S.D.N.Y. Nov. 21, 2012) ........................................... *passim*

*NML Capital, Ltd. v. Republic of Argentina*,
  08-cv-6978(TPG), 09-cv-1707(TPG), 09-cv-1708(TPG), 2012 WL
  5895786 (S.D.N.Y. Nov. 21, 2012) ....................................... 8, 23, 27

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) ...................................................... 3, 25, 26

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ....................................................... 6, 8, 26

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008) ........................................................................20, 25

*Oil City Petroleum Co. v. Fabac Realty Corp.*,
50 N.Y.2d 853 (N.Y. 1980) ...............................................................................19

*Republic of Argentina v. NML Capital, Ltd.*,
134 S. Ct. 2819 (2014)........................................................................................8

*Swezey v. Lynch*,
87 A.D.3d 119 (N.Y. App. Div. 2011) ......................................................15, 23

*Travelers Cas. & Sur. Co. v. Dormitory Auth. – State of New York*,
735 F. Supp. 2d 42 (S.D.N.Y. 2010) ...................................................................7

*Vasilas Bacolitsas v. 86th &3rd Owner, LLC*,
702 F.3d 673 (2d Cir. 2012) .......................................................................13, 16

*Wright v. Brockett*,
150 Misc. 2d 1031 (N.Y. Sup. Ct. 1991)...........................................................22

*Wright v. Union Cent. Life Ins. Co.*,
311 U.S. 273 (1940)...........................................................................................24

**Statutes**

N.Y. C.P.L.R. 5225 .....................................................................................*passim*

**Rules**

Fed. R. Civ. P. 69(a)(1)................................................................................13, 14

**Other Authorities**

Siegel, Practice Commentaries, McKinney's Con. Laws of N.Y.,
Book 7B, CPLR C5225:1, p. 240 ................................................................15, 16

## PRELIMINARY STATEMENT

Under the terms of an indenture dated June 2, 2005 (as supplemented on April 30, 2010, the "Indenture"), The Bank of New York Mellon ("BNY Mellon") acts as indenture trustee for certain bonds (the "Exchange Bonds") issued by the Republic of Argentina (the "Republic") in exchange for bonds previously issued pursuant to a 1994 Fiscal Agency Agreement (the "FAA"). In June 2014, the Republic made certain payments to BNY Mellon in its capacity as indenture trustee for the Exchange Bonds. Pursuant to the District Court's orders, BNY Mellon is holding these payments as indenture trustee.

Appellants obtained money judgments against the Republic in actions unrelated to the proceedings involving the held payments.[1] They have no interest in the Exchange Bonds and no rights or claims under the Indenture. Nevertheless, they filed motions ("Turnover Motions") seeking turnover of the payments made by the Republic to BNY Mellon under the Indenture. BNY Mellon opposed the motions because they were not supported by applicable law. The Republic opposed the motions based on state law and the Federal Sovereign Immunities Act. Certain beneficial holders of Euro-denominated Exchange Bonds (specifically, the "Euro Bondholders") opposed the motions, arguing a lack of jurisdiction—based

---

[1] Collectively, "Appellants" include the "Applestein Appellants," who filed an appeal pending at 14-4221-cv, and the "Dussault Appellant," who filed an appeal pending at 14-4235-cv.

on the applicability of English law to the Euro-denominated Exchange Bonds and the flow of funds outside the United States—and, alternatively, on state law grounds. The District Court denied the Turnover Motions based on the FSIA, without reaching other issues.

This Court can affirm the District Court's denial of the Turnover Motions based on the FSIA without reaching any other issues. The Court also can affirm the denial of these motions because they are not supported by applicable non-federal law. Under relevant non-federal law, Appellants may not execute on the payments held by BNY Mellon because: (i) the Republic has no interest in those payments; and (ii) BNY Mellon's rights and interests in the payments are superior. For both reasons, the denial of the Turnover Motions can be affirmed.

## COUNTER-STATEMENT OF THE ISSUES

Did the District Court err in denying the Turnover Motions where (a) the Republic has no interest in the subject payments, and (b) any purported interest of Appellants is subordinate to the rights and interests of BNY Mellon?

## COUNTER-STATEMENT OF THE CASE

**I.**  **BNY Mellon Holds Payments Received From The Republic On The Exchange Bonds As Indenture Trustee For The Exclusive Benefit Of Itself And The Holders Of The Bonds.**

In 2001, the Republic defaulted on its external debt, including certain debt securities (the "FAA Bonds") issued pursuant to the FAA.  In 2005 and 2010, the Republic offered holders of FAA Bonds an option to exchange their defaulted bonds for the Exchange Bonds.  *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 252-53 (2d Cir. 2012).

The Exchange Bonds are governed by the Indenture between the Republic, as issuer, and BNY Mellon, as indenture trustee.  A156 (Indenture); A294 (11/16/2012 Declaration of Kevin Binnie, "Binnie Dec.") at ¶ 3.[2]  The Republic issued Dollar-denominated and Euro-denominated Exchange Bonds, A294-295 (Binnie Dec.) at ¶¶ 5-6, which are governed, respectively, by the laws of New York and of England and Wales.  A215 (Indenture) at § 12.7.

The Indenture obligates the Republic to make payments due on the Exchange Bonds to BNY Mellon.  Specifically, § 3.1 provides:

> The Republic covenants and agrees that it will duly and punctually pay or cause to be paid the principal of and interest . . . on each of the Debt Securities and any other payments to be made by the Republic under the Debt Securities and this Indenture to the Trustee, at the place

---

[2]  Unless otherwise indicated, all references to the Appendix are to the Appendix filed by the Applestein Appellants at 14-4221-cv [Dkts. 70-72].

> or places, at the respective times and in the manner provided in the Debt Securities and this Indenture.

A178 (Indenture) at § 3.1.  Similarly, § 3.5(a) states:

> In order to provide for the payment of principal of and interest on the Debt Securities of any series as such principal and interest will become due and payable, the Republic hereby agrees to pay or to cause to be paid to an account of the Trustee . . . an amount which . . . shall be sufficient to pay the aggregate amount of interest or principal or both and any other amounts . . . becoming due in respect of such Debt Securities on such Payment Date.

A180 (Indenture) at § 3.5(a).

In the ordinary course, the process for payment begins with the Republic depositing funds into accounts in the name of BNY Mellon, as indenture trustee, at Banco Central de la República de Argentina ("Banco Central").  Thereafter, BNY Mellon transfers the payments through its accounts in Europe and New York to Euroclear Bank S.A. N.V., Clearstream Banking S.A., or the Depository Trust Company (the "Clearinghouses").[3]  The Clearinghouses then distribute the

---

[3]  BNY Mellon transfers payments on Exchange Bonds cleared through Euroclear and Clearstream—including both Euro-denominated Exchange Bonds and certain Dollar-denominated Exchange Bonds—through its accounts in Europe.  Conversely, BNY Mellon transfers payments on Exchange Bonds cleared through Depository Trust Company—including only certain Dollar-denominated Exchange Bonds—through its accounts in New York.  A296-298 ("Binnie Dec.") at ¶¶ 8-12.

payments to their participants and, ultimately, to beneficial holders of the Exchange Bonds (the "Exchange Holders"). A296-298 (Binnie Dec.) at ¶¶ 8-12.[4]

Consistent with the Indenture's terms, once the Republic sends debt service payments to BNY Mellon, "*the Republic shall have no interest whatsoever in such amounts*." A180 (Indenture) at § 3.5(a) (emphasis added). Rather, under the Indenture, BNY Mellon thereafter holds the payments received for the "*exclusive benefit of the Trustee and the Holders* entitled thereto in accordance with their interests . . . ." *Id.* (emphasis added); *see also* A178 (Indenture) at § 3.1 ("All monies . . . paid to the Trustee under the Debt Securities and this Indenture shall be held by it in trust for itself and the Holders of Debt Securities in accordance with their respective interests . . . ."); A195 (Indenture) at § 5.5 ("All monies received by the Trustee shall, until used or applied in accordance with this Indenture or the Terms, be held in trust for the Trustee, each agent or Appointee of the Trustee and the Holders of the Debt securities in accordance with their respective interests . . . ."). *See EM Ltd. v. Republic of Argentina*, 865 F. Supp. 2d 415, 423 (S.D.N.Y. 2012) (citing *NML Capital Ltd. v. Banco Central de la Republica Argentina*, 652

---

[4] The Exchange Holders, as beneficial holders of the Exchange Bonds, are different entities than the "Holders," as defined in the Indenture. *See* A165 (Indenture) at § 1.1 (defining "Holder" as "the Person in whose name a Debt security is registered in the Register"). No person, other than BNY Mellon, the Republic, and the Holders, as defined in the Indenture, have any rights under the Indenture, *see* A213 (Indenture) at § 12.2, and the Holders are "deem[ed] and treat[ed]" as the "absolute owner[s]" of the Exchange Bonds, *see* A201 (Indenture) at § 6.3.

F.3d 172 (2d Cir. 2011); *Brown v. Morgan & Co., Inc.*, 40 N.Y.S.2d 229 (1943), *aff'd*, 295 N.Y. 867 (1946)).

In a separate action brought by certain Euro Bondholders, the High Court of Justice, Chancery Division, of the Royal Court of Justice sitting in London, England similarly found that BNY Mellon holds the payments in trust and that the Republic has no interest in them. *See* BNY Mellon's Motion for Judicial Notice (Ex. 1), *Knighthead Master Fund LP v The Bank of New York Mellon* [2015] EWHC 270 (Ch) at ¶ 12 ("Once received by the trustee, the funds are held on those trusts and the Republic has no interest in them."); ¶ 45 ("[*A*]*s a matter of English law*, I can see no basis on which any . . . order [of the United States District Court for the Southern District of New York] could of itself give either the Republic or the Holdout Creditors any proprietary interest in the funds held by the trustee with the Central Bank.") (emphasis in original). Appellants declined the High Court's invitation to intervene in its proceedings. *Id.* at ¶¶ 38-42.

Moreover, just as this Court previously recognized, the Indenture contains a number of exculpatory provisions designed to protect BNY Mellon from exposure to liability. *See NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 n.11 (2d Cir. 2013). For example, BNY Mellon is not required to expend, advance, or risk its own funds or otherwise incur personal financial liability in the performance of its duties. A189 (Indenture) at § 5.1(g); A192 (Indenture) at

§ 5.2(xx).[5]  In furtherance of these exculpatory provisions, BNY Mellon holds a senior "charging lien" on payments that it holds, protecting it "against, any loss, liability, or expense incurred by the Trustee."  A196 (Indenture) at § 5.6(b). Finally, under the terms of the Indenture (including these exculpatory provisions), BNY Mellon owes no duties to Appellants and Appellants have no rights in payments made pursuant to the Indenture. *See, e.g.*, A213 (Indenture) at § 12.2.

## II.   The District Court Orders The Republic To Make A Ratable Payment To The NML Plaintiffs Whenever It Pays Any Amount Due On The Exchange Bonds And This Court Affirms.

Certain holders of the FAA Bonds (the "NML Plaintiffs") brought actions in the District Court seeking specific performance of the Republic's obligations to them under the FAA Bonds (the "*NML* litigation").  The District Court held that the Republic violated Paragraph 1(c) of the FAA by failing to make payments on FAA Bonds held by the NML Plaintiffs when making payments on the Exchange Bonds.   *NML Capital, Ltd. v. Republic of Argentina*, 08-cv-6978(TPG), 09-cv-1707(TPG), 09-cv-1708(TPG), 2011 WL 9522565, at *2 (S.D.N.Y. Dec. 7, 2011).

---

[5]  Exculpatory provisions are enforceable in accordance with their terms where they do not offend public policy.  *See, e.g.*, *Travelers Cas. & Sur. Co. v. Dormitory Auth. – State of New York*, 735 F. Supp. 2d 42, 58 (S.D.N.Y. 2010); *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384 (N.Y. 1983); *Banc of Am. Secs. LLC v. Solow Bldg. Co. II, LLC*, 47 A.D.3d 239, 244 (N.Y. App. Div. 2007).

The District Court issued injunctions (the "Injunctions") requiring the Republic to make a "Ratable Payment" to the NML Plaintiffs whenever the Republic "pays any amount due under the terms of" the Exchange Bonds and enjoining the Republic from "making any payment under the terms of the Exchange Bonds without . . . concurrently or in advance making a Ratable Payment to" the NML Plaintiffs.  *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, 08-cv-6978(TPG), 09-cv-1707(TPG), 09-cv-1708(TPG), 2012 WL 5895784, at *2 (S.D.N.Y. Nov. 21, 2012), *aff'd*, 727 F.3d 230 (2d Cir. 2013), *cert. denied*, *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2819 (2014).

The Injunctions prohibit all "participants in the payment process of the Exchange Bonds," including BNY Mellon, in its capacity as indenture trustee, "from aiding and abetting any violations" of the Injunctions, including "any effort" by the Republic "to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment."  *NML Capital*, 2012 WL 5895784 at *2; *see also NML Capital, Ltd. v. Republic of Argentina*, 08-cv-6978(TPG), 09-cv-1707(TPG), 09-cv-1708(TPG), 2012 WL 5895786, at *4-5 (S.D.N.Y. Nov. 21, 2012).  Appellants are not parties to the *NML* litigation or beneficiaries of the Injunctions.

### III. The Republic Makes Payments On The Exchange Bonds Without Making Ratable Payments To The NML Plaintiffs, And BNY Mellon Retains The Payments In Compliance With The Injunctions.

The Injunctions became effective on June 18, 2014, following the U.S. Supreme Court's denial of certiorari. A300 (06/18/2014 Order). On June 26, 2014, the Republic deposited €225,852,475.66 and $230,922,521.14 (the "Funds"), for a total aggregate amount of approximately $539 million, into BNY Mellon's Banco Central accounts for the ostensible purpose of making payments due on the Exchange Bonds. A305-306 (06/27/2014 Tr.) at 11:14-15:18.

Argentina, however, did not make a Ratable Payment to the NML Plaintiffs "concurrently or in advance" of making this $539 million payment, and BNY Mellon therefore retained the Funds in its Banco Central accounts in compliance with the Injunctions. *Id.* The District Court endorsed BNY Mellon's action. *See* A311 (06/27/2014 Tr.) at 33:3-7 (observing that BNY Mellon "didn't do anything wrong," that it "properly held onto" the Funds, and that its retention of the Funds was "very very good"); A316 (08/08/2014 Tr.) at 7:25-8:2 (observing that BNY Mellon acted "wisely and in accordance with the court orders"); A521 (10/27/2014 Order) ("This was the proper thing for BNY to do"). The court also found that the Republic's failure to make Ratable Payments to the NML Plaintiffs in conjunction with its payment of the Funds was "a violation of court orders binding on the Republic." *See* A311 (06/27/2014 Tr.) at 33:1-2. Further, the Republic's failure to

- 9 -

make Ratable Payments—as opposed to the Republic's payment to BNY Mellon in accordance with the Indenture—was deemed "illegal." A308 (06/27/2014 Tr.) at 23:5-24:2;[6] *see also NML Capital*, 2012 WL 5895784 at *2.

## IV. The District Court Clarifies That BNY Mellon Should Retain The Payments Consistent With The Indenture And The Injunctions.

On July 10, 2014, BNY Mellon moved for an order clarifying that (i) consistent with the Indenture and the District Court's prior orders, it should retain the Funds in trust in its Banco Central accounts and (ii) such retention would not violate the Injunctions, would comply with the District Court's orders, and would not expose BNY Mellon to liability. A31 (Mot. to Clarify). After a hearing, the District Court entered an order on August 6, 2014 (the "August 6 Order"), finding that Argentina's payment of the Funds in the absence of a Ratable Payment to the NML Plaintiffs was "illegal and a violation of the [Injunctions]." A55 (08/06/2014 Order). In its Order, the District Court acknowledged that BNY Mellon holds the Funds pursuant to the Indenture, confirmed that BNY Mellon should "retain the Funds in its accounts at [Banco Central] pending further Order of th[e] Court," and stated that BNY Mellon "shall incur no liability under the Indenture" or "otherwise" for complying with the its orders. *Id.* In recognition

---

[6] The Dussault Appellant selectively quoted a portion of this colloquy in her Brief without making clear that the District Court was referencing the Republic's failure to make the Ratable Payment required by the Injunctions when it noted the illegality of the Republic's actions. *See* Dussault Appellant's Brief at 26-27.

that the Republic has no interest in the Funds, the court ordered the Republic to "take no steps to interfere with" BNY Mellon's retention of the Funds in its accounts. *Id.*

## V. The District Court Rejects Appellants' Motions Seeking Turnover Of The Payments BNY Mellon Holds As Indenture Trustee Pursuant To Court Order.

After the Republic's payment, Appellants moved the District Court—in actions separate and distinct from the *NML* litigation—to direct BNY Mellon to pay some portions of the Funds to Appellants as judgment creditors of Argentina. A13 (Applestein Appellants' Mot.); Case 14-4235, A72 (Dussault Appellant's Mot.). Relying on Rule 69(a) of the Federal Rules of Civil Procedure and N.Y. CPLR § 5225(b), Appellants contended that "BNY Mellon is in possession of money in which the Republic has an interest and [that Appellants] have an interest in the money superior to that of the transferee," but offered no evidence to support any of these assertions, including that the Republic has an interest in the Funds. A69 (Applestein Appellants' Brief); *see also* Dkt. 63, Case 1:06-cv-13085-TPG (S.D.N.Y.) (Dussault Appellant's Brief), at 6. The Applestein Appellants also claimed—again without factual support—that their rights outweighed BNY Mellon's interests in the Funds.[7] A69.

---

[7] Appellants did not argue that the Republic had a right to possession of the Funds, and the Dussault Appellant did not argue that she had any rights superior to BNY Mellon's interest in the Funds. *See* Dkt. 63, Case 1:06-cv-13085-TPG (S.D.N.Y.).

In response, BNY Mellon pointed to specific provisions of the Indenture and other evidence demonstrating why the Republic has no interest in the Funds. Rather, as noted above, BNY Mellon holds the Funds for the exclusive benefit of itself and the Holders, and its rights are superior to any alleged interest of Appellants. A84-87 (BNY Mellon's Opp. Brief). The Republic and certain Euro Bondholders also opposed the Turnover Motions, A327; A459, echoing BNY Mellon's argument that the Republic lacks any interest in the Funds, A340-344; A471-473. The Republic additionally argued that the FSIA precluded turnover because the Funds are located outside the United States, A475-477, and the Euro Bondholders also maintained that matters relating the Euro-denominated Exchange Bonds should be decided under English law and by an English Court, A339-340.

The District Court denied the Turnover Motions. A516 (10/27/2014 Order). While reiterating that the Republic's payment to BNY Mellon was "improper" because the Republic failed to make any Ratable Payments, the court re-confirmed that BNY Mellon acted "proper[ly]" in retaining the Funds. A521 (10/27/2014 Order). The District Court then held that the FSIA precluded turnover because the Funds are located outside of the United States. A521-522 (10/27/2014 Order). The court did not reach the question of whether the Republic has an interest in the Funds that may be attached under applicable state law, or whether BNY Mellon's interest in the Funds outweighs any purported interest of Appellants. Nor did it

- 12 -

address or resolve whether English law controlled the proper disposition of the Funds.

## STANDARD OF REVIEW

In a special proceeding under New York CPLR § 5225(b), applicable here through Rule 69(a) of the Federal Rules of Civil Procedure, a court "may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) (quotations and citations omitted).[8] This Court reviews the District Court's denial of the Turnover Motions *de novo*, and it may affirm on any legal ground supported by the record. *Id.*

The arguments advanced by BNY Mellon can support affirmance because this Court has "discretion to consider issues that were raised, briefed, and argued in the District Court, but that were not reached there." *Vasilas Bacolitsas v. 86th &3rd Owner, LLC*, 702 F.3d 673, 681 (2d Cir. 2012). The non-federal issues were briefed fully and the result compelled by state law is clear and indisputable. This Court therefore may affirm on those grounds.

---

[8] Section 5225(b) is made "applicable in the District Court via Fed. R. Civ. P. 69(a)." *HBE Leasing Corp.*, 48 F.3d at 633.

## SUMMARY OF ARGUMENT

Under controlling substantive law as applied to the terms of the Indenture, the Appellants have no right to turnover of the Funds. First, Appellants' claim fails because the Republic has no interest in the Funds. Second, any interest Appellants may claim is subordinate to BNY Mellon's rights and interests in the Funds.

## ARGUMENT

Under Rule 69(a) of the Federal Rules of Civil Procedure, execution on a money judgment follows "the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Under N.Y. CPLR § 5225(b), a judgment creditor may move for an order compelling a third party to turn over assets belonging to the judgment debtor. N.Y. CPLR § 5225(b).[9] However, "CPLR 5225(b) . . . turns on whether [the judgment debtor] has an interest in the property" being sought by the

---

[9] Section 5225(b) provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money . . . in which the judgment debtor has an interest, or against a person who is a transferee of money . . . from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

N.Y. CPLR § 5225(b).

- 14 -

judgment creditor. *Lang v. State of New York*, 258 A.D.2d 165, 169 (1st Dept. 1999).[10]

CPLR 5225(b) provides a two-step analysis for determining whether property in the possession of a third party should be turned over to a judgment creditor. *Beauvais v. Allegiance Sec. Inc.*, 942 F.2d 838, 840 (2d Cir. 1991). First, the judgment creditor must show that "the judgment debtor has an interest in the property the creditor seeks to reach." *Id.* Second, if the judgment creditor satisfies the first step of the analysis, then the creditor also must show "either that the judgment debtor is entitled to the possession of such property, *or* . . . that the judgment creditor's rights to the property are superior to those of the party in whose possession it is." *Id.* (internal quotations omitted); *see also In re Miraglia v. Essex Ins. Co.*, 96 A.D.3d 945, 945 (N.Y. App. Div. 2012). "Only after both steps of the analysis are demonstrated may the trial court order the transferee to turn over the property to the judgment creditor . . . ." *Beauvais*, 942 F.2d at 840-41 (citing

---

[10] "In New York . . ., a party seeking to enforce a judgment 'stand[s] in the shoes of the judgment debtor in relation to . . . a property interest he may own.'" *Karaha Bodas Co. v. Perusahaan Pertambangan Miinyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) (quoting *Bass v. Bass*, 140 A.D.2d 251, 253 (N.Y. App. Div. 1988)); *see also Swezey v. Lynch*, 87 A.D.3d 119, 127-28 (Sup. Ct. App. Div. 2011) ("Needless to say, 'a creditor stands in no better position with respect to property of the garnishee than does his debtor.'") (citing *Smith v. Amherst Acres*, 43 A.D.2d 792 (1973); *Bass*, 140 A.D.2d at 253 (a judgment creditor "cannot . . . reach assets in which the judgment debtor has no interest"); Siegel, N.Y. Prac. § 488, at 826 (4th ed.) ("The judgment creditor stands in the shoes of the judgment debtor, and if a given property, asset, interest, or deposit is unavailable to the debtor, it is unavailable to the creditor.").

*Key Lease Corp v. Manufacturers Hanover Trust Co.*, 117 A.D.2d 560, 561-62, 499 N.Y.S.2dd 66, 68 (1st Dep't 1986)).  To carry its burden, "the judgment creditor must approach [a CPLR 5225 motion] armed with a convincing array of evidence."  Siegel, Practice Commentaries, McKinney's Con. Laws of N.Y., Book 7B, CPLR C5225:1, p. 240.

As discussed below, Appellants cannot satisfy either prong of this Court's *Beauvais* standard.  The District Court's denial of their motions can be affirmed for these independent reasons.  *See Vasilas Bacolitsas*, 702 F.3d at 681.

I.    **Under The Indenture, The Republic Has No Interest In Payments That BNY Mellon Holds As Indenture Trustee For The Benefit Of Itself And The Holders Of The Exchange Bonds.**

The relationship between the Republic and BNY Mellon is governed by the Indenture.  *See Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (It is "well established under state common law that the duties of an indenture trustee are strictly defined and limited to the terms of the indenture . . . .") (citations omitted); *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 815-16 (2d Cir. 1985) ("Unlike the ordinary trustee, who has historic common law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.") (citations omitted); *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 156 (2008) ("The trustee under a corporate

indenture . . . has his rights and duties defined . . . exclusively by the terms of the agreement.") (citations omitted).

Here, the Indenture provides that the Republic surrendered any interest in the Funds immediately on payment to BNY Mellon. *See* A180 (Indenture) at § 3.5(a) (providing that "the Republic shall have no interest whatsoever in such amounts"). Rather, once payment is made, BNY Mellon holds the Funds for "the exclusive benefit of the Trustee [BNY Mellon] and the Holders entitled thereto in accordance with their respective interests . . . ." *Id.*; *see also* A178 (Indenture) at § 3.1; A195 (Indenture) at § 5.5.

Appellants make no serious attempt to construe the Indenture or meet their threshold burden of showing how the Republic has an interest in the Funds. Instead, they simply assert that the Republic has an interest in the Funds because it "attempted to exercise control over the funds," Applestein Appellants' Brief at 21; *see also* Dussault Appellant's Brief at 25 (alleging that a debtor has an interest in its own money). Appellants' attempts to manufacture an interest for the Republic in the Funds are meritless.

To begin with, Appellants suggestion that the Republic exercised control over the Funds through its subsequent attempts to pay the Exchange Holders without BNY Mellon's assistance proves nothing with regard to the Funds. *See* Applestein Appellants' Brief at 21-22. As Appellants acknowledge, the District

- 17 -

Court re-confirmed the Republic's lack of interest in the Funds and ordered the Republic to cease such activities.  *Id.*

And, Appellants' argument that BNY Mellon cannot comply with the Injunctions without "permission" from the Republic misstates the terms of the Injunctions.  *See* Dussault Appellant's Brief at 26.  As discussed above, BNY Mellon complied with the Injunctions by holding the Funds in the absence of the Republic making a Ratable Payment to the NML Plaintiffs.  If the Republic makes a Ratable Payment or the District Court otherwise lifts the restrictions contained in the Injunctions and the August 6 Order, BNY Mellon will distribute the Funds through the payment process in accordance with the Indenture.

Finally, Appellants' assertion that the Republic retains a theoretical reversionary interest under §§ 11.3 and 11.4 of the Indenture misreads the Indenture.  *See* Applestein Brief at 22; Dussault Appellant's Brief at 29 n.10. Section 11.3 only applies to money held by the Trustee Paying Agent—not BNY Mellon, as indenture trustee—following "the satisfaction and discharge of th[e] Indenture," and such money is repaid only "upon written demand of the Republic." A213 at § 11.3.  Here, the Funds are not being held by the Trustee Paying Agent, there has been no satisfaction or discharge of the Indenture, and the Republic has not demanded repayment.  Similarly, § 11.4 applies only where money is "unclaimed" for a specified period of years and is repaid only "upon written

- 18 -

request" of the Republic.  *Id.* at § 11.4.  The Funds have not gone unclaimed—they have been claimed by the Trustee for itself and the Holders—and the Republic has not made a written request for repayments.

Appellants' reliance on *Capital Ventures International v. Republic of Argentina*, 443 F.3d 214 (2d Cir. 2006), does not change the above analysis in any respect.  The plaintiff there sought to attach the Republic's reversionary interest in certain collateral.  443 F.3d at 217-18.  This Court found that the plaintiff could attach the Republic's reversionary interest even though the chances of the plaintiff ever realizing on that interest were remote.  *Id.* at 220-223.  Conversely, Appellants here are not seeking to attach moneys that may become payable to the Republic in the future; they are seeking immediate turnover of Funds held for the exclusive benefit of BNY Mellon and the Holders, in which the Republic has "no interest whatsoever."  A180 (Indenture) at § 3.5(a).

In sum, because the Republic has no interest in the Funds, Appellants cannot satisfy the first prong of the *Beauvais* test.  The District Court's denial of the Turnover Motions can be affirmed on this ground alone.  *See Oil City Petroleum Co. v. Fabac Realty Corp.*, 50 N.Y.2d 853, 854 (N.Y. 1980) (where "it appears that the judgment debtor divested itself completely of all interest in the properties . . ., it cannot be said that the judgment debtor retained any interest whatsoever in [the funds being sought]" and "[f]or this reason alone, the petition must be dismissed

- 19 -

inasmuch as a turnover proceeding pursuant to CPLR 5225 . . . simply does not lie"); *Lang*, 258 A.D.2d at 171 (finding "the fact that [the judgment debtor] retained no interest in the [] funds [to be] fatal to [the judgment creditor's] argument") (citations omitted).

## II. The Republic Is Not Entitled To Possession Of The Held Funds And BNY Mellon's Rights In Those Funds Are Superior To Any Purported Rights Of Appellants.

Appellants also cannot satisfy the second prong of the *Beauvais* test—that the Republic be entitled to possession of the Funds or that Appellants' rights to the Funds are superior to those enjoyed by BNY Mellon, as indenture trustee.

### A. The Republic Is Not Entitled To Possession Of The Held Funds.

In the District Court, Appellants made no effort to show that the Republic is entitled to possession of the Funds. In making this argument for the first time on appeal, the Dussault Appellant contends that the District Court found the Republic's payments to BNY Mellon "illegal," thereby making them "void *ab initio*." Dussault Appellant's Brief at 28.[11] This contention is unsustainable as a matter of fact and law.

---

[11] Because it is raised for the first time on appeal, this argument should not be considered. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (quoting *Bogle–Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006)) ("'[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.'").

As a factual matter, the Indenture predates the Injunctions, and this Court and the District Court have affirmed the validity and enforceability of the Indenture and the Republic's obligation to make the payments due under it. Likewise, it is undisputed that the Republic paid the Funds to BNY Mellon pursuant to the Indenture.

As a legal matter, in light of the facts surrounding the Republic's payment of the Funds, the cases relied upon by the Dussault Appellant for the proposition that "the transaction between the Republic and BNY [Mellon]" is "void *ab initio*" are inapposite. In three of the four cases cited, the courts found that the contracts at issue were void because they contained illegal provisions.[12] The Indenture, however, contains no illegal provisions. What is improper here is the Republic's failure to make Ratable Payments, not its payment of the amounts due under the Indenture. *See* A308 (06/27/2014 Tr.) at 23:5-24:2; A311 (06/27/2014 Tr.) at 33:1-2.

---

[12] *See DeBeck v. United States*, AS-11-CA-45-FB, 2014 WL 4416078, at *20 (W.D. Tx. Aug. 20, 2014) (finding that the transfer of a dental practice to an unlicensed owner/operator was illegal); *Couldock & Bohan, Inc. v. Societe Generale Securities Corp.*, 93 F. Supp. 2d 220, 231 (D. Conn. 2000) (finding that performance of a clearing agreement involved violations of the Securities Exchange Act, which provides, in part, that any contract, "the performance of which involves the violation" of the Act, "shall be void"); *In re Municipal Art Society v. New York*, 137 Misc. 2d 832, 837-38 (N.Y. Sup. Ct. 1987) (finding that a contract between the City and a developer that provided for an illegal payment by the developer in exchange for zoning bonus was void).

The Dussault Appellant also misreads the fourth case, *Wright v. Brockett*, 150 Misc. 2d 1031 (N.Y. Sup. Ct. 1991). The court there noted that agreements to compromise criminal cases "usually" are unenforceable, but the New York Legislature had adopted a policy to encourage parties to resolve their disputes through ADR and to abandon pending or threatened criminal prosecution. 150 Misc. 2d at 1038. The court therefore concluded that "ADR agreements which involve monetary settlements in exchange for discontinuation of proposed or pending criminal charges are ***not*** void." *Id.* (emphasis added). This proposition plainly does not help Appellant's argument.

Because the Republic made the payments due under the terms of the Indenture, BNY Mellon holds such payments in accordance with the Indenture in trust for itself and the Holders, and the August 6 Order requires BNY Mellon is to hold such payments until otherwise ordered by the Court, the Republic is not entitled to possession of the Funds. Affirmance is warranted for this reason, too.

## B. Appellants' Rights Are Inferior To BNY Mellon's Rights In The Held Funds.

Appellants have the burden of establishing that their rights to the Funds are superior to those of BNY Mellon. *See, e.g.*, *Gelbard v. Esses*, 96 A.D.2d 573, 576 (N.Y. App. Div. 1983). In attempting to carry this burden, Appellants assert a superior interest based on their status as "judgment creditors." They do not argue that the payments are avoidable, they do not argue that they have a superior lien or

security interest, and they do not offer any evidence supporting their conclusory assertion.  Because Appellants "stand[] in no better position with respect to" the Funds than the Republic, *Swezey*, 87 A.D.3d at 127-28, whatever rights Appellants have are inferior to BNY Mellon's rights and claims under the Indenture.

As discussed above, the Republic forfeits all interests in the Funds upon payment to BNY Mellon.  *See* A180 (Indenture) at § 3.5(a).  BNY Mellon holds the Funds in trust, exclusively for itself and the Holders.  *Id.*; *see also* A178 (Indenture) at § 3.1; A195 (Indenture) at § 5.5 ("All monies received by the Trustee shall, until used or applied in accordance with this Indenture or the Terms, be held in trust for the Trustee, each agent or Appointee of the Trustee and the Holders of the Debt Securities in accordance with their respective interests . . . ."); *NML Capital*, 2011 WL 9522565; *NML Capital*, 2012 WL 5895784; *NML Capital*, 2012 WL 5895786; A55 (08/06/2014 Order); *Knighthead Master Fund LP v The Bank of New York Mellon* [2015] EWHC 270 (Ch).  By comparison, while standing in the shoes of their judgment debtor, Appellants have no right or interest in the Funds.

Additionally, the Republic indemnifies BNY Mellon "against, any loss, liability, or expense incurred" and, as security for its indemnification claim, BNY Mellon has a senior charging lien against the Funds.  *See* A195-196 (Indenture) at § 5.6; *see also* A185 (Indenture) at § 4.5 (payments are to be applied first to "all

amounts due to the Trustee . . . including (without limitation) amounts due under Section 5.6"). Here, the Euro Bondholders have sued BNY Mellon in Belgium and in England, seeking to compel payment of the Funds. BNY Mellon's potential liability, and therefore its indemnification claim, extends to the entirety of the Funds.[13] An order compelling the Trustee to turn over any part of the Funds would deprive the Trustee of this lien in contravention of the Fifth Amendment, *see, e.g.*, *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273 (1940) (mortgage lien constitutes property interest under the Fifth Amendment); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) (mortgagee entitled to compensation for the relinquishment of its lien).[14]

---

[13] In prior briefing before this Court, the Euro Bondholders informed the Court that they "have initiated proceedings in Belgium and England to affirm obligations under foreign law of various participants in the [Exchange] Bond payment process—including BNYM, the Bank of New York Depositary (Nominees) Limited ("BNY London"), the Bank of New York S.A./N.V. "BNY Brussels") and Euroclear—to make payments to" these Exchange Holders. Case 14-2922 [Dkt. 76-1] at 7 n.3.

[14] Turnover also would deprive BNY Mellon of the benefit of the exculpatory provisions set forth in the Indenture for the purpose of protecting BNY Mellon against exposure to theoretical claims of the Holders and the Exchange Holders. *See supra* at p. 6. And it would make Appellants third-party beneficiaries of the Indenture, in direct contravention of the prohibition in Section 12.2. *See supra* at 4 n.3. Even absent BNY Mellon's unchallenged contract rights, Section 5225 could not be employed where it could subject BNY Mellon—an indenture trustee performing a ministerial role—to any risk of double liability. *See JP Morgan Chase Bank, N.A. v. Motorola, Inc.*, 47 A.D.3d 293, 306 (N.Y. App. Div. 2007) (citing *Harris v. Balk*, 198 U.S. 215, 226 (1905) ("It ought to be and it is the object of courts to prevent the payment of any debt twice over.").

In short, Appellants cannot show that any purported right they might assert to the Funds is superior to BNY Mellon's rights and interests. For this additional reason, the District Court's ruling can be affirmed.

## III. Appellants' Argument That The Indenture Is "Illegal" Is Meritless.

Unable to avoid the effect of the Indenture, Appellants contend, again for the first time on appeal, that the NML Plaintiffs "challenged" the legality of the 2005 and 2010 bond exchanges and that the Indenture was "superseded" by the Injunctions. *See* Applestein Appellants Brief at 9, 11.[15] For a number of reasons, this contention is unsupported by the record.

First, the NML Plaintiffs did not seek to displace or invalidate the Indenture in making their claim for injunctive relief. To the contrary, they sought an order requiring that their rights under the FAA be treated "at least equally with all . . . other present and future unsecured and unsubordinated External Indebtedness," including the Exchange Bonds. *NML Capital*, 2011 WL 9522565 at *2. Far from seeking a determination that the Indenture or the Exchange Bonds are illegal, the NML Plaintiffs acknowledged the Indenture's force and effect. *Id.*; *see also NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 252 (2d Cir. 2012).

Second, without questioning in any way the legality of payments to BNY Mellon or the validity of the Indenture, the District Court required Ratable

---

[15] This argument should not be considered because it was not made below. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d at 132.

Payments to the NML Plaintiffs when a payment was made under the Indenture. *See NML Capital*, 2012 WL 5895784, at *2 ("Whenever the Republic pays any amount due under [the Exchange Bonds], the Republic shall concurrently or in advance make a 'Ratable Payment' to NML . . . ."); *see also id.* ("Such 'Payment Percentage' shall be the fraction calculated by dividing the amount actually paid . . . under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.").

Third, in affirming the Injunctions, this Court, too, confirmed the validity and enforceability of the Indenture. *See NML Capital*, 699 F.3d at 259 n.10 ("To conclude otherwise would be to hold that the 2005 and 2010 exchange offers themselves violated the [FAA's] Equal Treatment Provision, a position not even [the NML] plaintiffs have taken."). This Court further confirmed that the Injunctions did not relieve the Republic of its obligations under the Indenture and the Exchange Bonds. *See NML Capital*, 727 F.3d at 242 n.10 ("[I]f, after we affirm the [Injunctions], Argentina decides to default on the Exchange Bonds, . . . Exchange Bondholders would then be able to sue over that default."); *NML Capital*, 699 F.3d at 256 ("As to the exchange bondholders, the Injunctions do not 'jeopardiz[e] [their] rights' because 'all that the Republic has to do' is 'honor its legal obligations.'"). And, this Court also recognized that BNY Mellon "enjoy[s]

the protection of exculpatory clauses" contained within the Indenture. *Id.* at 243 n.11 (citing to Indenture § 5.2(xvi), A192).

Fourth, the Injunctions themselves, as clarified by the August 6 Order, address the Republic's obligations under the FAA and restrain distribution of the Funds ***after*** receipt by BNY Mellon. *NML Capital*, 2012 WL 5895784 at *2-3.[16] The August 6 Order leaves no doubt that BNY Mellon properly holds payments made pursuant to the Indenture; BNY Mellon should incur no liability for holding payments in its Banco Central accounts until they can be paid in accordance with the Indenture and the Injunctions; and the Republic has no interest in those payments and should take no steps to interfere with BNY Mellon's retention of those payments. A55 (08/06/2014 Order).

Fifth, after the Republic's violation of the Injunctions, the District Court continued to recognize the Republic's obligations under the Indenture. A315 (08/08/2014 Tr.) at 4:16-17 ("[T]he Republic surely has obligations to those exchanges, without any doubt . . . .").

---

[16] *See also NML Capital*, 2012 WL 5895786 at *5 ("If Argentina complies with the rulings of the Court of Appeals, there will be no problem about funds destined for exchange bondholders being deposited with BNY and going up the chain until they arrive in the hands of such bondholders. But if Argentina attempts to make payments to the exchange bondholders, contrary to the ruling of the Court of Appeals and thus contrary to law, this would not involve the normal and proper situation dealt with by BNY under the indenture, and dealt with by others in the chain. Under these circumstances, these third parties should properly be held responsible for making sure that their actions are not steps to carry out a law violation, and they should avoid taking such steps.").

Sixth, at no time has the District Court or this Court ever found the Indenture or the Exchange Bonds to be "superseded" for any reason or on any ground—and the NML Plaintiffs have never requested such a finding. Rather, the Injunctions are concerned solely with securing payments to the NML Plaintiffs in conjunction with the Republic's payments on the Exchange Bonds.

Accordingly, the relationship between the Republic, BNY Mellon, and the Holders continues to be governed by the Indenture. Appellants' argument to the contrary is meritless.

## CONCLUSION

For the foregoing reasons, the District Court's order denying the Turnover Motions should be affirmed.

Dated: March 23, 2015

REED SMITH LLP

By: *James C. Martin*

    James C. Martin
    Eric A. Schaffer
    599 Lexington Avenue
    New York, N.Y. 10022
    (212) 521-5400

*Attorneys for Non-Party Intervenor The Bank of*
*New York Mellon, as Indenture Trustee*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,992 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

Dated: March 23, 2015    By: *James C. Martin*
                                                James C. Martin
                                                Eric A. Schaffer
                                                599 Lexington Avenue
                                                New York, N.Y.  10022
                                                (212) 521-5400